Citation Nr: 1814057 
Decision Date: 03/07/18 Archive Date: 03/14/18

DOCKET NO. 12-15 965 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an acquired psychiatric disorder, to include depression, and as secondary to degenerative disc disease (DDD) of the lumbar spine and hallux valgus deformity.

2. Entitlement to service connection for headaches, to include as secondary to service-connected asthma. 

3. Entitlement to an initial evaluation for sciatica, left lower extremity, in excess of 10 percent prior to July 6, 2016, and in excess of 20 percent thereafter.

4. Entitlement to an initial evaluation for sciatica, right lower extremity, in excess of 10 percent prior to July 6, 2016, and in excess of 20 percent thereafter.

5. Entitlement to service connection for sleep apnea, to include as secondary to a headache disability.

6. Entitlement to an initial evaluation in excess of 20 percent for DDD of the lumbar spine. 

7. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: J. Michael Woods, Attorney


ATTORNEY FOR THE BOARD

C. Cho, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from September 1985 to September 1988.

This matter comes before the Board of Veterans' Appeals (Board or BVA) on appeal from July 2010 and March 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

The Board notes that this case was remanded previously in September 2015.

In the July 2010 rating decision, the RO granted service connection for sciatica in both the right and left lower extremities, each with an evaluation of 10 percent effective February 12, 2007. 

In July 2010, the Veteran filed a Notice of Disagreement (NOD), seeking a higher initial evaluation for his service-connected right and left lower extremities sciatica.

Based on a July 2016 VA examination, in a February 2017 Supplemental Statement of the Case, the RO awarded increased ratings to 20 percent for his service-connected right and left lower extremities sciatica, effective July 6, 2016.

As these increases do not represent a total grant of benefits sought on appeal, the claim for increase remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

Medical evidence pertaining to the Veteran's claims for entitlement to service connection for an acquired psychiatric disorder, to include depression, entitlement to service connection for headaches, and entitlement to service connection for sleep apnea, indicate that these disabilities may be secondary to the Veteran's service-connected disabilities. The Board notes that the scope of a claim includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1 (2009); Brokowski v. Shinseki, 23 Vet. App. 79 (2009). As such, the Veteran's claims have been recharacterized as reflected on the title page. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-7 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

The issues of entitlement to service connection for sleep apnea, to include as secondary to a headache disability, entitlement to an initial rating in excess of 20 percent for DDD of the lumbar spine, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).






FINDINGS OF FACT

1. The Veteran's acquired psychiatric disorder, to include depression, is caused by her service-connected DDD of the lumbar spine and hallux valgus deformity.

2. The Veteran's headaches are caused by her service-connected asthma.

3. For the period from February 17, 2006 to April 13, 2016, the Veteran exhibited symptoms consistent with mild incomplete paralysis of the sciatic nerve for the left lower extremity sciatica.

4. For the period from April 14, 2016 forward, the Veteran exhibited symptoms consistent with moderate incomplete paralysis of the sciatic nerve for the left lower extremity sciatica. 

5. For the period from February 17, 2006 to July 5, 2016, the Veteran exhibited symptoms consistent with mild incomplete paralysis of the sciatic nerve for the right lower extremity sciatica. 

6. For the period from July 6, 2016 forward, the Veteran exhibited symptoms consistent with moderate incomplete paralysis of the sciatic nerve for the right lower extremity sciatica. 


CONCLUSIONS OF LAW

1. The criteria for service connection on a secondary basis for an acquired psychiatric disability, to include depression, are met. 38 U.S.C. §§ 1110, 5107 (West 2012); 38 C.F.R. §§ 3.159, 3.303, 3.310 (2017).

2. The criteria for service connection on a secondary basis for headaches are met. 38 U.S.C. §§ 1110, 5107 (West 2012); 38 C.F.R. §§ 3.159, 3.303, 3.310 (2017).

3. For the period from February 17, 2006 to April 13, 2016, the criteria for an initial rating of 10 percent, but no higher, for sciatica of the left lower extremity have been met. 38 U.S.C. § 1155 (West 2012); 38 C.F.R. § 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2017).

4. For the period from April 14, 2016 forward, the criteria for an initial rating of 20 percent, but no higher, for sciatica of the left lower extremity have been met. 38 U.S.C. § 1155 (West 2012); 38 C.F.R. § 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2017).

5. For the period from February 17, 2006 to July 5, 2016, the criteria for an initial rating of 10 percent, but no higher, for sciatica of the right lower extremity have been met. 38 U.S.C. § 1155 (West 2012); 38 C.F.R. § 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2017).

6. For the period from July 6, 2016, the criteria for an initial rating of 20 percent, but no higher, for right lower extremity sciatica have been met. 38 U.S.C. § 1155 (West 2012); 38 C.F.R. § 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Entitlement to Direct Service Connection and Secondary Service Connection

Service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303. Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013).

In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998); 38 C.F.R. § 3.310 (2017). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


1. Entitlement to service connection for an acquired psychiatric disorder, to include depression, and as secondary to DDD of the lumbar spine and hallux valgus deformity

For the following reasons, the Board finds that the evidence is at least in equipoise as to whether the Veteran's acquired psychiatric disorder, to include depression, is caused by her service-connected DDD of the lumbar spine and hallux valgus deformity. Therefore, entitlement to service connection for an acquired psychiatric disorder, to include depression, and as secondary to DDD of the lumbar spine and hallux valgus deformity, is granted.

Here, the Board finds that the Veteran has a current diagnosis of a depressive disorder due to another medical condition with depressed features under the Diagnostic and Statistical Manual (DSM-5). See VA Mental Disorders Disability Benefits Questionnaire (DBQ) dated August 2015. Therefore, the current diagnosis requirement is met. 

The second element on the issue of entitlement to secondary service connection is also met, as the Veteran is service-connected for the disabilities of DDD of the lumbar spine and hallux valgus. See, e.g., January 2017 Rating Decision Codesheet. 

Finally, the nexus element is met, as the Board finds that the Veteran's acquired psychiatric disorder, to include depression, is caused by her service-connected DDD of the lumbar spine and hallux valgus deformity.

The Board finds persuasive the June 2016 private medical opinion from psychologist H. H-G., Ph.D., who concluded that the Veteran's depressive disorder is secondary to her medical conditions. See June 2016 private medical opinion from psychologist H. H-G., Ph.D. Specifically, psychologist H. H-G., Ph.D. stated in her report:

This expert believes [the Veteran's] depressive disorder [is] secondary to [her] medical condition . . . 

Additionally, the hallux valgus deformity, bunionectomy, degenerative disc disease of the lumbar spine, right and left lower extremity sciatica and asthma, in turn, continue to manifest as a depressive disorder. Moreover, this expert opines the hallux valgus deformity, bunionectomy, degenerative disc disease of the lumbar spine, right and left lower extremity sciatic and asthma have caused the depressive disorder.

June 2016 private medical opinion from psychologist H. H-G., Ph.D.

Psychologist H. H-G. also specifically considered the Veteran's post-service treatment records and relevant medical literature, which she extensively discussed in her opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Based on the foregoing, the Board finds the opinion to be sufficient and entitled to probative weight. 

In addition, there are no negative nexus opinions of record.

Hence, after resolving reasonable doubt in the Veteran's favor, the Board finds that the June 2016 private medical opinion from psychologist H. H-G., Ph.D. supports the finding that the Veteran's acquired psychiatric disability was caused by her service-connected DDD of the lumbar spine and hallux valgus deformity, at least to an evidentiary position of equipoise. See 38 C.F.R. § 3.307, 4.124a; see also 38 U.S.C. § 5107; Gilbert, 1 Vet. App. at 49.

Based on the foregoing, service connection for acquired psychiatric disorder is granted. Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' . . ., the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding . . . benefits.").


2. Entitlement to service connection for headaches, to include as secondary to service-connected asthma 

For the following reasons, the Board finds that the evidence is at least in equipoise as to whether the Veteran's headaches is caused by her service-connected asthma. Therefore, entitlement to service connection for headaches, to include as secondary to asthma, is granted.

Here, the Board finds that the Veteran has a current diagnosis of tension headaches. See VA Mental Disorders DBQ dated January 2016. Therefore, the current diagnosis requirement is met. 

The second element on the issue of entitlement to secondary service connection is also met, where the Veteran is service-connected for asthma. See January 2016 Rating Decision Codesheet. 

Finally, the nexus element is met as the Board finds that the Veteran's tension headaches are caused by her service-connected asthma.

The Board finds persuasive the January 2016 private medical opinion from H. S., M.D., who concluded that the Veteran's tension headaches are caused in part by her service-connected asthma. See January 2016 private medical opinion from H. S., M.D. Specifically, H. S., M.D. stated in his report:

It is as likely as not that the veteran's headaches are caused by her sleep apnea, depressive disorder, and asthma. . . . I interviewed the veteran on 1/12/16 and she stated when her asthma is really bothering her it brings on a headache. Her description of her relatonship between headaches and asthma is consistent with my own experience treating patients and medical journals so I do believe her description is accurate. Studies have shown that migraine and nonmigrainous headache is approximately 1.5 times more likely among those with current asthma than the population in general.

January 2016 private medical opinion from H. S., M.D. See also Nieves-Rodriguez, 22 Vet. App. at 302-05 (2008); Barr, 21 Vet. App. at 312. Based on the foregoing, the Board finds the opinion to be sufficient and entitled to probative weight. 

In addition, there are no negative nexus opinions of record.

Hence, after resolving reasonable doubt in the Veteran's favor, the Board finds that the January 2016 private medical opinion from H. S., M.D. supports the finding that the Veteran's headaches are caused by her service-connected asthma, at least to an evidentiary position of equipoise. See 38 C.F.R. § 3.307, 4.124a; see also 38 U.S.C. § 5107; Gilbert, 1 Vet. App. 49 (1990). 

Based on the foregoing, service connection for headaches is granted. Wise, 26 Vet. App. at 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' . . ., the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding . . . benefits.").

Entitlement to Increased Initial Ratings

VA has adopted a Schedule for Rating Disabilities to evaluate service-connected disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 3.321(a); see generally, 38 C.F.R. Part 4. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. The percentage ratings in the Schedule for Rating Disabilities represent, as far as practicably can be determined, the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. 

Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

"Staged" ratings may be appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran's service-connected disability. 38 C.F.R. § 4.14 (2016); see Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

Here, the Veteran contends that she is entitled to an initial evaluation for bilateral sciatica in the lower extremities in excess of 10 percent prior to July 6, 2016, and in excess of 20 percent thereafter. As the Veteran is appealing the original assignment of disability evaluations following the award of service connection, it is not the present level of disability which is of primary importance, but rather the entire period is to be considered to ensure that consideration is given to the possibility of staged ratings; that is, separate ratings for separate periods of time based on the facts found. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Turning to the rating criteria, diseases of the peripheral nerves are rated based on the degree of paralysis, neuritis, or neuralgia. The term "incomplete paralysis" indicates a degree of impaired function substantially less than the type of picture for "complete paralysis" given for each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a, Diseases of the Peripheral Nerves, Note. When the involvement is wholly sensory, the rating for incomplete paralysis should be for the mild, or, at most, the moderate degree. Id. 

The terms "mild," "moderate," and "severe" are not defined in the rating schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to arrive at a just and equitable decision. Additionally, the use of such terminology by VA examiners and others, although an element to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

Here, for the Veteran's service-connected bilateral sciatica in the lower extremities, the Veteran is rated 10 percent prior to July 6, 2016, and 20 percent thereafter, under Diagnostic Code 8799-8620 (analogized to neuritis). 

Neuritis characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe incomplete paralysis. 38 C.F.R. § 4.123. The maximum rating which may be assigned for neuritis not characterized by such organic changes will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. Id. Tic douloureux may be rated up to complete paralysis of the affected nerve. 38 C.F.R. § 4.124.

However, the assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the diagnosis and demonstrated symptomatology. Any change in a diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). Furthermore, the selection of diagnostic codes or applicable rating criteria is not protected and may be appropriately revised if the action does not result in the reduction of compensation payments. See 38 C.F.R. § 3.951, 3.957; Butts, 5 Vet. App. 532; VAOPGCPREC 71-91 (Nov. 7, 1991).

Here, the medical evidence of record does not show any diagnosis of neuritis or neuralgia in the sciatic nerve in either lower extremity. Instead, the Veteran's VA examinations dated December 2012, April 2016, and July 2016, show that she has incomplete paralysis of the sciatic nerve in both lower extremities. Thus, the Board finds that a switch in diagnostic code to Diagnostic Code 8520 is appropriate here and would result in a more accurate representation of the area affected by the service-connected injury. Moreover, the change in diagnostic code would not result in the reduction of compensation payments for the Veteran. The ratings under Diagnostic Code 8520 (paralysis of the sciatic nerve) would also allow for higher overall ratings than the ratings under Diagnostic Code 8620 (neuritis of the sciatic nerve). See 38 C.F.R. § 4.123. As such, the Board will analyze both the period prior to July 6, 2016, and the period after, under Diagnostic Code 8520 first, and then apply all other potentially applicable diagnostic codes.

Under Diagnostic Code 8520, a 10-percent rating is warranted for mild incomplete paralysis of the sciatic nerve, a 20-percent rating is warranted for moderate incomplete paralysis of the sciatic nerve, a 40-percent rating is warranted for moderately severe incomplete paralysis of the sciatic nerve, and a 60-percent rating is warranted for severe incomplete paralysis of the sciatic nerve with marked muscular atrophy. Id. An 80-percent rating is warranted for complete paralysis of the sciatic nerve where the foot dangles and drops, no active movement of muscles below the knee is possible, and flexion of the knee is weakened or lost. Id. 

Relevant Facts

A December 2008 VA examination report shows the Veteran reported intermittent weakness but constant pain and numbness in both lower extremities. On physical examination, the examiner specifically noted that the sensation is intact to light touch in the right lower extremity, and is decreased but present along the lateral side of the veteran's thigh, calf, and foot, but the remainder is normal in the left lower extremity. Deep tendon reflexes are normal at grade +2 bilaterally and the Veteran walks with as low and mildly antalgic gait. 

A March 2010 VA examination report shows the Veteran reported that she has pain and spasms in both her upper and lower legs bilaterally. The examiner reported that the Veteran has tenderness to palpation over her quadriceps muscles bilaterally and over her shins bilaterally but nowhere else in her legs. She has no swelling noted in her legs. Peripheral pulses are normal at grade +2. She is not tender in her calves or in her hamstring area. There is no fracture, dislocation, osteoblastic or osteolytic lesions present and the soft tissues were found to be unremarkable.

A May 2011 private medical treatment record from the Carolina Back Institute shows the Veteran reported left knee pain with ambulation, which the private medical treating provider associated as likely osteoarthritis; however, no mention of sciatica or its symptomatology was made here.

A July 2012 private medical treatment record from the Carolina Back Institute shows a diagnosis of intermittent bilateral knee pain attributable to patellofemoral syndrome; however, no mention of sciatica or its symptomatology was made here.

Another July 2012 private medical treatment record from the Carolina Back Institute shows the Veteran reported left knee pain with ambulation, which the private medical treating provider associated with a likely meniscal tear; however, no mention of sciatica or its symptomatology was made here.

A December 2012 VA examination report shows the examiner noted that in both lower extremities, the Veteran was experiencing mild constant pain, no intermittent pain, severe paresthesias and/or dysesthesias, and mild numbness. The examiner also reported that muscle atrophy was not present. Reflexes were normal in both lower extremities. There was decreased sensation for light touch in both lower extremities. No trophic changes. The only relevant nerve groups affected were the sciatic nerve, and the examiner reported mild incomplete paralysis in the sciatic nerves of both lower extremities. There were no other significant diagnostic test findings and/or results. 

An August 2013 VA medical record shows the Veteran requesting a new knee brace and that she was told by her treating doctor that there was no medical need for a knee brace, back brace, or cane.

A February 2014 VA medical record shows the Veteran reporting left knee pain hurting more over the past 1.5 weeks and sometimes right knee pain. Knee pain was deemed to be likely attributable to meniscus tear. No mention of sciatica or its symptomatology was made here.

A June 2014 VA medical record shows the Veteran reporting chronic knee pain.

An October 2014 VA medical record shows the Veteran reported left knee pain. 

An April 2016 VA examination report shows the examiner found sciatica in the left lower extremity only. The examiner stated that all nerves were evaluated and that there was no objective findings for the right lower extremity, and therefore, a diagnosis for the right lower extremity was not warranted. As for the sciatica in the left lower extremity, the examiner noted that the Veteran reported experiencing ever present left leg pain, intermittent paresthesias and numbness in both legs, and numbness and tingling in the anterior left knee and plantar aspect of the foot. The examiner also reported no constant pain for the right lower extremity and severe for the left lower extremity, intermittent pain as moderate for the right lower extremity and none for the left lower extremity, for paresthesias and/or dysesthesias as moderate for the right lower extremity and severe for the left lower extremity, and numbness as moderate for the right lower extremity and severe for the left lower extremity. The examiner also reported that muscle atrophy was not present. Reflexes were normal in both lower extremities. There was decreased sensation for light touch in the left lower leg/ankle only. No trophic changes. The only relevant nerve groups affected were the sciatic nerve, and the examiner reported moderate incomplete paralysis in the sciatic nerve of the left lower extremity, and normal for the right lower extremity. There were no other significant diagnostic test findings and/or results. The examiner concluded that the finding of decreased left ankle dorsiflexion strength results in the designation of left sciatic radiculopathy as moderate, though motor strength testing is volitional.

3. Entitlement to an initial evaluation for sciatica, left lower extremity

i. Entitlement to an Initial Evaluation in Excess of 10 Percent for Service-Connected Sciatica in the Left Lower Extremity for the Period From February 12, 2006 to April 13, 2016

Based on the evidence, the Board finds that for the period from February 17, 2006 to April 13, 2016, a rating of 10 percent, but no higher, for the left lower extremity sciatica is warranted, as the symptoms associated with the right lower extremity sciatica were mild for this period. In short, the objective medical evidence shows that throughout this period, the Veteran had for the left lower extremity sciatica, normal reflexes and his only symptoms were pain, which, with respect to sciatica, was rated only by the December 2012 VA examiner, who rated it as mild. The Veteran also had normal muscle tone and strength for the right lower extremity sciatica throughout this period. Furthermore, there was no muscle atrophy. 

While the Board notes that the Veteran had additionally complained of knee pain to private and VA treating physicians, the Board notes that in these instances, the pain was not attributed to sciatica but to other specific disabilities, including meniscus tear, and therefore, are not relevant and have not been considered for this decision. 

Furthermore, entitlement to initial evaluations in excess of 10 percent for the sciatica in the left lower extremity sciatica for the period prior to April 13, 2016 is not warranted. Indeed, in total, the Veteran's disability was described as no more than mild and at no point up to April 13, 2016 does the evidence show that the Veteran's left lower extremity sciatica caused moderate, moderately severe, or severe paralysis of the sciatic nerve. See Diagnostic Code 8520. 

As a result, the Board finds that for the period from February 17, 2006 to April 13 2016, a rating of 10 percent, but no higher, for the left lower extremity sciatica is warranted.

ii. Entitlement to an Initial Evaluation in Excess of 20 Percent for Service-Connected Sciatica in the Left Lower Extremity for the Period From April 14, 2016

Turning to the period from April 14, 2016 forward, the Board finds that based on the evidence of record, a rating of 20 percent, but no higher, for the left lower extremity sciatica is warranted, as the symptoms associated with the right lower extremity sciatica were characterized by moderate incomplete paralysis for this period.

Moderate incomplete paralysis of the left lower extremity sciatica was first shown at the April 14, 2016 examination. The April 14, 2016 VA examiner concluded that the sciatica in the left lower extremity is moderate and the Board agrees that a rating of moderate incomplete paralysis, as reflected with a 20 percent rating, is warranted here. The Board does not find any evidence in the April 14, 2016 VA examination demonstrating that the rating should be higher than 20 percent because even though the examiner reported, for the sciatica in the left lower extremity, severe constant pain, severe paresthesias and/or dysesthesias, and severe numbness, the examiner also reported that the Veteran's reflexes and muscle strength were nevertheless normal. Moreover, the Veteran could still sense light touch and no muscle atrophy was present. 

The Veteran underwent another VA examination in July 2016. At the July 2016 VA examination, the examiner noted the left lower extremity sciatica was associated with normal muscle strength, no muscle atrophy, hypoactive deep tendon reflexes, and decreased sensation to light touch. The examiner also noted that in the left lower extremity sciatica, the Veteran was experiencing no constant pain, moderate intermittent pain, moderate paresthesias and/or dysesthesias, and moderate numbness. No trophic changes. The only relevant nerve group affected for the left lower extremity was the sciatic nerve. There were no other significant diagnostic test findings and/or results. The examiner concluded that the severity of the left lower extremity sciatica was moderate.

Based on the April 14, 2016 and July 6, 2016 VA examination reports, the Veteran's symptoms for left lower extremity sciatica has been consistent with moderate incomplete paralysis. As discussed above, on VA examinations in April 14, 2016 and July 2016, the Veteran had normal muscle strength with no muscle atrophy and the Veteran was able to sense light touch. The Veteran was also graded as having no constant pain, moderate intermittent pain, moderate paresthesias and/or dysesthesias, and moderate numbness. Furthermore, the radiculopathy was felt to be moderate but not severe. There was also no evidence of foot drop, complete or severe or moderately severe paralysis, constant weakness, or muscle atrophy. 

Furthermore, entitlement to initial evaluations in excess of 20 percent for the left lower extremity sciatica from April 14, 2016 is not warranted. Indeed, in total, the Veteran's disability was described as no more than moderate and at no point from April 14, 2016 does the evidence show that the Veteran's left lower extremity sciatica caused moderately severe or severe paralysis of the sciatic nerve. See Diagnostic Code 8520. 

As a result, the Board finds that for the period from April 14, 2016, a rating of 20 percent, but no higher, for the left lower extremity sciatica is warranted.

Finally, for both periods, the Board has considered the Veteran's lay statements concerning the symptoms of the service-connected disability and her medical history. The Veteran, as a lay person, is competent to describe observable symptoms such as pain. However, laypersons do not have the competence to render an opinion as to the level of severity of a neurologic disability. See Kahana v. Shinseki, 24 Vet. App. 428 (2011). The VA examination findings and VA treatment notes are competent and credible evidence concerning the nature and extent of the Veteran's left lower extremity sciatica disability. The medical professionals examined the Veteran, and the examiners rendered pertinent opinions in conjunction with the evaluations. Moreover, as the examiners have the requisite medical expertise to render a medical opinion regarding the degree of impairment caused by the disability and had sufficient facts and data on which to base the conclusion, the Board affords their opinions great probative value.

For all periods, the Board also finds that no additional higher or alternative ratings under different diagnostic codes can be applied for the left lower extremity sciatica. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). There is no evidence in the record that the Veteran has or has had any neuralgia, neuritis, or marked muscular atrophy in the right lower extremity sciatica - which, if found, may warrant additional or alternative ratings under different Diagnostic Codes. Thus, the Board finds that no higher or alternative ratings under a different diagnostic code can be applied here.


4. Entitlement to an initial evaluation for sciatica, right lower extremity

i. Entitlement to an Initial Evaluation in Excess of 10 Percent for Service-Connected Sciatica in the Right Lower Extremity for the Period From February 12, 2006 to July 5, 2016

Based on the evidence, the Board finds that for the period from February 17, 2006 to July 5, 2016, a rating of 10 percent, but no higher, is warranted for the right lower extremity sciatica, as the symptoms associated with the right lower extremity sciatica were mild for this period. In short, the objective medical evidence shows that throughout this period, the Veteran had for the right lower extremity sciatica, normal reflexes and his only symptoms were pain, which, with respect to sciatica, was rated only by the December 2012 VA examiner, who rated it as mild. The Veteran also had normal muscle tone and strength for the right lower extremity sciatica throughout this period. Furthermore, there was no muscle atrophy. 

While the Board notes that the Veteran had additionally complained of knee pain to private and VA treating physicians, the Board notes that in these instances, the pain was not attributed to sciatica but to other specific disabilities, including meniscus tear, and therefore, are not relevant and have not been considered for this decision. 

Furthermore, the Board notes that in the April 14, 2016 VA examination, the VA examiner concluded that there was no objective findings for the right lower extremity sciatica, and that therefore, a diagnosis for the right lower extremity was not warranted. However, the Board will not reduce the Veteran's rating because of this examiner's findings. The Veteran has already been awarded a 10-percent rating for the right lower extremity sciatica. Moreover, a VA subsequent examiner did make a finding of a right lower extremity sciatica diagnosis at a later the July 2016 VA examination (which will be discussed below).

Finally, entitlement to initial evaluations in excess of 10 percent for the right lower extremity sciatica has not been demonstrated by the evidence of record at any point for the period prior to July 6, 2016. Indeed, in total, the Veteran's disability was described as no more than mild and at no point up to July 6, 2016 does the evidence show that the Veteran's right lower extremity caused moderate, moderately severe, or severe paralysis of the sciatic nerve. See Diagnostic Code 8520. 

As a result, the Board finds that for the period from February 17, 2006 to July 5, 2016, a rating of 10 percent, but no higher, is warranted for the right lower extremity sciatica.

ii. Entitlement to an Initial Evaluation in Excess of 20 Percent for Service-Connected Sciatica in the Right Lower Extremity for the Period From July 6, 2016

Turning to the period from July 6, 2016 forward, the Board finds that based on the evidence of record, an increased rating in excess of 20 percent is not warranted for this period because the right lower extremity sciatica is manifested by no more than moderate incomplete paralysis.

The Veteran underwent a VA examination in July 2016. At the July 2016 VA examination, the examiner diagnosed the Veteran with right lower extremity sciatic radiculopathy. The examiner noted the right lower extremity sciatica was associated with normal muscle strength, no muscle atrophy, hypoactive deep tendon reflexes, and decreased sensation to light touch. The examiner also noted that in the right lower extremity sciatica, the Veteran was experiencing no constant pain, moderate intermittent pain, moderate paresthesias and/or dysesthesias, and moderate numbness. No trophic changes. The only relevant nerve group affected for the right lower extremity was the sciatic nerve. There were no other significant diagnostic test findings and/or results. The examiner concluded that the severity of the right lower extremity sciatica was moderate.

Based on the July 6, 2016 VA examination report, the only relevant evidence for this period, the Veteran's symptoms for right lower extremity sciatica was consistent with moderate incomplete paralysis. As discussed above, on VA examination in July 2016, the Veteran had normal muscle strength with no muscle atrophy and the Veteran was able to sense light touch. The Veteran was also graded as having no constant pain, moderate intermittent pain, moderate paresthesias and/or dysesthesias, and moderate numbness. Furthermore, the radiculopathy was felt to be moderate but not severe. There was also no evidence of foot drop, complete or severe or moderately severe paralysis, constant weakness, or muscle atrophy. 

Furthermore, entitlement to initial evaluations in excess of 20 percent for the right lower extremity sciatica from April 14, 2016 is not warranted. Indeed, in total, the Veteran's disability was described as no more than moderate and at no point from April 14, 2016 does the evidence show that the Veteran's right lower extremity sciatica caused moderately severe or severe paralysis of the sciatic nerve. See Diagnostic Code 8520. 

As a result, the Board finds that for the period from July 6, 2016, a rating of 20 percent, but no higher, for the right lower extremity sciatica is warranted.


Finally, for both periods, the Board has considered the Veteran's lay statements concerning the symptoms of the service-connected disability and her medical history. The Veteran, as a lay person, is competent to describe observable symptoms such as pain. However, laypersons do not have the competence to render an opinion as to the level of severity of a neurologic disability. See Kahana, 24 Vet. App. at 428. The VA examination findings and VA treatment notes are competent and credible evidence concerning the nature and extent of the Veteran's right lower extremity sciatica disability. The medical professionals examined the Veteran, and the examiners rendered pertinent opinions in conjunction with the evaluations. Moreover, as the examiners have the requisite medical expertise to render a medical opinion regarding the degree of impairment caused by the disability and had sufficient facts and data on which to base the conclusion, the Board affords their opinions great probative value.

For all periods, the Board also finds that no additional higher or alternative ratings under different diagnostic codes can be applied for the right lower extremity sciatica. See Schafrath, 1 Vet. App. at 593. There is no evidence in the record that the Veteran has or has had any neuralgia, neuritis, or marked muscular atrophy in the right lower extremity sciatica - which, if found, may warrant additional or alternative ratings under different Diagnostic Codes. Thus, the Board finds that no higher or alternative ratings under a different diagnostic code can be applied here.


ORDER

Entitlement to an acquired psychiatric disorder, to include depression, and as secondary to DDD of the lumbar spine and hallux valgus deformity, is granted.

Entitlement to service connection for headaches, to include as secondary to service-connected asthma, is granted.

For the period from February 17, 2006 to April 13 2016, entitlement to an initial rating of 10 percent, but no higher, for the left lower extremity sciatica, is warranted. 

For the period from April 14, 2016, entitlement to an initial rating of 20 percent, but no higher, for the left lower extremity sciatica, is warranted.

For the period from February 17, 2006 to July 5, 2016, entitlement to an initial rating of 10 percent, but no higher, for the right lower extremity sciatica, is warranted. 

For the period from July 6, 2016, entitlement to an initial rating of 20 percent, but no higher, for the right lower extremity sciatica, is warranted.


REMAND

Although further delay is regrettable, for the following reasons, the Board finds that remand is warranted for the claims of entitlement to service connection for sleep apnea, to include as secondary to a headache disability, entitlement to an initial rating in excess of 20 percent for DDD of the lumbar spine, and entitlement to TDIU.

First, with respect to the claim of entitlement to service connection for sleep apnea, to include as secondary to a headache disability, VA is obliged to provide an examination or obtain a medical opinion based on a review of the evidence of record if VA determines it is necessary to decide the claim. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. See id.

Here, the January 2016 private medical opinion from H. S., M.D indicates that the Veteran has a current diagnosis of sleep apnea. See January 2016 private medical opinion from H. S., M.D. The report also contains an indication that her diagnosed sleep apnea may be aggravated by the Veteran's service-connected disabilities, including headaches. See January 2016 private medical opinion from H. S., M.D. ("Research has clearly demonstrated that certain headache disorders are associated with different patterns of sleep disturbance."). In further support, H.S., M.D., cited to and submitted supporting generalized medical literature, entitled "Sleep Apnea Headache and Headaches with Sleep Apnea: The Importance of Being Secondary." However, there is no competent evidence of record addressing whether the Veteran's sleep apnea is caused by or aggravated by her now service-connected headaches or any other service-connected disability. 

Because the evidence of record raises the issue of secondary service connection and no competent opinion on that issue has been obtained, the Veteran is entitled to a VA examination and opinion with respect to her sleep apnea. See 38 U.S.C. § 5103A (d)(2); McLendon, 20 Vet. App. at 81-86. Any opinion obtained regarding secondary service connection must address both causation and aggravation of the nonservice-connected condition. Allen v. Brown, 7 Vet. App. 439, 448-49 (1995); 38 C.F.R. § 3.310.

Next, the Veteran last underwent VA examinations for his service-connected DDD of the lumbar spine in July 2016. Since then, however, the United States Court of Appeals for Veterans Claims (Court) issued a decision in the case of Correia v. McDonald, 28 Vet. App. 158, 169-70 (2016), which affects the Veteran's case. In Correia, the Court determined that additional requirements must be met prior to finding that a VA examination is adequate. See id. Although the Board sincerely regrets the delay, it is necessary to ensure that the Veteran's VA examinations regarding his increased initial rating claim for service-connected DDD of the lumbar spine complies with the requirements of the holding in Correia. Moreover, at his July 2016 VA examination, the Veteran reported experiencing flare-ups of the back that cause him constant pain. See July 2016 VA examination. Therefore, upon remand, the new examiner must also elicit relevant information as to the Veteran's flare-ups of the back and ask him to describe the additional functional loss he suffers during these flares, and then either (1) estimate the functional loss due to flares based on all the evidence of record including lay information, or (2) explain why she could not do so based on a lack of knowledge in the medical community. See Sharp v. Shulkin, 29 Vet. App. 26 (2017). Accordingly, in light of the above, the Board finds that a VA examination is necessary to ascertain the current severity of his service-connected DDD of the lumbar spine in accordance with the requirements of Correia and Sharp.

Finally, as to the issue of entitlement to TDIU, the Board finds the TDIU issue inextricably intertwined with the above increased ratings claims being remanded, as the criteria for TDIU are dependent, in part, on the Veteran's service-connected disability ratings. Accordingly, the Board will also remand the issue of entitlement to a TDIU at this time.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a new examination to determine whether she has a current sleep apnea diagnosis that is at least as likely as not (a 50 percent or greater probability) the result of disease or injury in service; or proximately due to, or aggravated by, a service-connected disability(s), to include headaches. 

The examiner is advised aggravation means the service-connected disability caused an increase in the severity of an existing nonservice-connected disability beyond the natural progression of the disease. If aggravation is found, the examiner must attempt to establish the baseline level of severity of the sleep apnea prior to aggravation by the service-connected disability.

The examiner is advised the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinion. If the examiner rejects the Veteran's reports, he or she must provide a reason for doing so.

The examination report must include a complete rationale for all opinions provided. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and explain why an opinion cannot be provided without resorting to speculation. Any missing evidence that would enable the examiner to provide the opinion should also be identified.

2. Schedule the Veteran for a VA examination to ascertain the current severity and manifestations of his service-connected DDD of the lumbar spine. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is instructed to review all pertinent records associated with the claims file.

It should be noted that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for evaluating the Veteran's service-connected DDD of the lumbar spine under the rating criteria. 

The examiner should also provide the range of motion in degrees of the back. In so doing, the examiner should test the Veteran's range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain so in the report.

It is also imperative that the examiner comment on the functional limitations caused by flare-ups and repetitive use of the back. In this regard, the examiner must indicate whether, and to what extent, the Veteran's range of motion is additionally limited during flare-ups or on repetitive use, expressed, if possible, in terms of degrees, or explain why such details cannot be feasibly provided.

The examiner shall inquire as to periods of flare-up, and note the frequency and duration of any such flare-ups. 

ANY ADDITIONAL IMPAIRMENT ON USE OR IN CONNECTION WITH FLARE-UPS SHOULD BE DESCRIBED IN TERMS OF THE DEGREE OF ADDITIONAL RANGE OF MOTION LOSS. THE EXAMINER SHOULD SPECIFICALLY DESCRIBE THE SEVERITY, FREQUENCY, AND DURATION OF FLARE-UPS; NAME THE PRECIPITATING AND ALLEVIATING FACTORS; AND ESTIMATE, PER THE VETERAN, TO WHAT EXTENT, IF ANY, SUCH FLARE-UPS AFFECT FUNCTIONAL IMPAIRMENT. IF THE EXAMINER IS UNABLE TO CONDUCT THE REQUIRED TESTING OR CONCLUDES THAT THE REQUIRED TESTING IS NOT NECESSARY IN THIS CASE, HE OR SHE SHOULD CLEARLY EXPLAIN WHY THAT IS SO.

3. For all opinions, the RO should ensure that a rationale is provided, to include specific discussion of the medical principles involved and the relevant facts.

If the requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training. Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). (The Agency of Original Jurisdiction should ensure that any additional evidentiary development suggested by the examiner be undertaken so that a definite opinion can be obtained.)

Any opinion expressed by the VA examiner should be accompanied by a complete rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008). 

4. The Veteran is hereby notified that it is her responsibility to report for any examination, and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655.

5. THE AOJ MUST REVIEW THE CLAIMS FILE AND ENSURE THAT THE FOREGOING DEVELOPMENT ACTION HAS BEEN COMPLETED IN FULL. IF ANY DEVELOPMENT IS INCOMPLETE, APPROPRIATE CORRECTIVE ACTION MUST BE IMPLEMENTED. IF ANY REPORT DOES NOT INCLUDE ADEQUATE RESPONSES TO THE SPECIFIC OPINIONS REQUESTED, IT MUST BE RETURNED TO THE PROVIDING EXAMINER FOR CORRECTIVE ACTION.

6. After completion of the above development, readjudicate the issues on appeal, including the Veteran's claim for TDIU. If any benefit sought on appeal remains denied, a supplemental statement of the case must be provided to the Veteran and her representative. After the Veteran and her representative have had an adequate opportunity to respond, the entire appeal must be returned to the Board for appellate review.





The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).







______________________________________________
YVETTE R. WHITE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs